IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE | ) |
|  | ) |
| LEONARD T. REXROAD and | )  04-43456-H3-13 |
| KIMBERLY ANNE REXROAD, | ) |
|  | ) |
| Debtors | ) |

## MEMORANDUM OPINION

The court held a hearing on confirmation of Debtors' Eighth Amended Chapter 13 Plan ("Plan") (Docket No. 334) and has considered the Objections and Supplemental Objections thereto by the United States of America, Internal Revenue Service, ("IRS") and R.I. Collections, LLC and Rex-Tech International, LLC. (collectively referred to as "Rex-Tech"). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered confirming the Plan. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

On September 21, 2004, Leonard T. Rexroad and Kimberly Anne Rexroad ("Debtors"), filed a voluntary bankruptcy petition under Chapter 13. Docket No. 1. William E. Heitkamp was appointed the Chapter 13 Trustee. The Trustee has certified that as of August 28, 2006, the Debtors are current on the payments

due under their proposed Plan.  Docket No. 361.

Debtors are third-party defendants in litigation pending in the 55th Judicial District Court of Harris County, Texas in Cause No. 2003-38112, styled "Powertuff Corporation and Powertuff Rig Parts, L.L.C. v. Rex-Tech International, L.L.C. v. Leonard Timothy Rexroad, et. al. v. Riva Services, L.L.C., et. al" ("State Court Litigation").  The court lifted the automatic stay to allow Rex-Tech International, L.L.C., R.I. Collections, L.L.C., Powertuff Corporation and Powertuff Rig Parts, L.L.C.  to proceed with the State Court litigation to liquidate the claims of the parties.  Docket Nos. 25 and 120.  One of the issues to be resolved by the State Court Litigation is the ownership interest of Rex-Tech in oil field equipment that the Debtors have claimed and listed as assets in their bankruptcy proceeding.

Debtors have sought court authorization to employ an auctioneer to sell certain of the equipment, the ownership of which is in dispute in the State Court Litigation.  In a separate Memorandum Opinion and Judgment, the court has authorized the employment of the auctioneer and sale of the equipment.  All proceeds from the auction are to be deposited in the court registry until resolution of the State Court Litigation. Thereafter, distributions will be made in accordance with the state court's findings of ownership.

Debtors' Plan provides for variable payments over a period of 36 months: $541 is to be paid during months one through eighteen; $549 is to be paid during months twenty through thirty-four; and payments of $32,101, $177,000 and $300,300 are to be paid in months 19, 35 and 36, respectively.  In the event that Debtors are entirely successful in the State Court Litigation, all of Debtors' liquidated creditors will be paid 100% of their claims.

Any auction proceeds distributed to the Debtors pursuant to the findings of the state court will be turned over to the Chapter 13 Trustee.  To the extent the funds generated from the sale of the equipment do not satisfy a 100% payment to creditors, the Debtors' Plan provides for the turnover to the Trustee of an additional $9,290.53 of tax refunds previously issued to Debtors.  In the event that Debtors are not successful in the State Court Litigation, the Plan provides that between 2% and 2.47% will be paid on the claims of unsecured creditors.[1]

The Chapter 13 Trustee does not object to confirmation of the Plan.  However, confirmation of Debtors' Plan is opposed by the IRS and Rex-Tech on the bases that: the plan is not feasible as its funding is contingent on the sale of the oilfield

---

[1] The Plan filed by Debtors reflects an anticipated minimum percentage payment of 2% for general unsecured claims.  Docket No. 334.  The Chapter 13 Trustee's Summary of Chapter 13 Plan reflects a payment of 2.47%.  Docket No. 353.  The percentages are estimates based on the amount of debt listed in Debtors' schedules.

equipment in dispute; Debtors are not required to turnover the balance of previous tax refunds unless the sale proceeds are insufficient to satisfy a 100% plan; the plan provides for direct payments by Debtors to secured creditors, GMAC and Rex Terry; the plan is not proposed in good faith; and it is not in the best interests of creditors because the Plan fails the liquidation test (i.e., that the value to be distributed on behalf of unsecured claims is less than the amount that would be paid on these claims if the estate of the Debtors were liquidated under Chapter 7).  Docket Nos. 351, 358, and 362.

The Debtors' Amended Schedules I and J reflect that Leonard T. Rexroad is currently employed by Rig Equipment Specialists, Inc., which is owned by Kimberly Rexroad's son. Kimberly Rexroad is not employed but receives $200 per month from stall rentals.  Debtors have a total combined monthly income of $6,120.63 with projected monthly expenses of $5,570.00, leaving $550.63 in disposable income.  Docket No. 326.  Debtor, Leonard T. Rexroad, entered into a wage order whereby $126.70 per week (or approximately $549 per month) is deducted from his earnings and paid to the Chapter 13 Trustee by Debtor's employer.  Docket No. 345.

As of August 24, 2006, Debtors have paid $42,421 to the Chapter 13 Trustee.  Debtors mailed an additional payment of $1,614 to the Trustee prior to the hearing on this matter.

Docket No. 326; Testimony of Kimberly Rexroad. The Trustee filed a Certification of Compliance on August 28, 2006, which reflects that the Debtors are current on the payments due under their proposed Plan. Docket No. 361. The court finds that all of Debtors' disposable income is being paid into the plan. Additional funding for the plan will be any proceeds generated by the sale of the equipment previously referenced, and the sale of certain additional assets listed in Debtors' Schedule B[2], less costs of sale.

     Kimberly Rexroad testified that Debtors do not owe money to GMAC and they make no payments to GMAC. She explained that a truck was purchased by Mr. Rexroad's son with financing from GMAC. She testified that the son pays GMAC directly and GMAC was listed on the plan only because Leonard Rexroad's name is included on the title to his son's truck. As to Rex Terry Kimberly Rexroad testified that he holds the mortgage on the Debtors' homestead and he is paid monthly, as is reflected on Schedule J.

---

[2] The Plan includes a provision that in the event certain property of Debtors, listed on Schedule B numbers 12, 17, 20, and 29, is sold for a fair market price, those funds will be paid into the Chapter 13 plan. Following is an approximate description of the referenced property: 30% of the stock in Rex-Tech; 66.66% of Quality American Rig Parts; $16,000 owed by Tuff Parts to Debtors; $8,000 in unpaid loans to Rex-Tech employees; 2/3rds of $128,000 owed to Quality American Rig Parts; $35,000 in unpaid wages owed Kimberly Rexroad from J-Tech; counterclaims for certain equipment and tools withheld by Rex-Tech which are valued separately in amounts over $20,000 and $200,000; various tax refunds owed to Debtors; contingent claims against James Petersen, Jr. for breach of contract and defamation; and certain listed horses.

As to unpaid taxes, the objection of the IRS on this basis is moot as the Debtors filed their 2005 tax return and paid their 2005 taxes. Additionally, Debtors have amended their plan to pay $300 per month for estimated taxes for the months of January through May 2006. In June 2006, Mr Rexroad became a wage employee which eliminates the need to pay estimated taxes in the future.

Kimberly Rexroad testified that she and her husband filed bankruptcy due to the expensive, contentious State Court Litigation with Rex-Tech. Debtors have been involved in a dispute, culminating in the State Court Litigation, with Rex-Tech for over three years. The court takes judicial notice of the dockets in this bankruptcy case and in Adversary Proceedings 05-3023 and 05-3027, and of State Court Litigation pleadings[3] submitted as exhibits to motions filed or hearings held by this court. Rex-Tech has pursued the dispute in the State Court Litigation and in this bankruptcy court in a continuously aggressive manner, with a multiplicity of pleadings. Kimberly Rexroad testified they "ran out of money" because of the cost of

---

[3] Pleadings from the State Court Litigation have been submitted to this court as exhibits to motions filed in this bankruptcy court or introduced as evidence on hearings held by this court. See Main Case, Hearings on Motion For Relief from Stay held on May 11, 2005, June 7, 2005, and July 19, 2005. See Main Case, Supplemental Documents by Order of Court, Docket No. 301 and Notice to Court of Action Taken in State Court Litigation, Docket No. 315. See Adversary No. 05-3023, Hearings on Temporary Restraining Order and Preliminary Injunction held January, 11, 2005, January 14, 2005, and January 31, 2005. See Adversary No. 05-3027, Second Motion for Temporary Restraining Order, Docket No. 15 and Exhibit List attached to Pretrial Statement, Docket No. 50.

the State Court Litigation.

Although it is disputed by Rex-Tech, Kimberly Rexroad credibly testified that, in an attempt to avoid additional litigation, she and her husband offered to settle with Rex-Tech. She testified that they offered to give up their claim to the disputed drilling equipment in exchange for Rex-Tech's leaving them alone. No settlement was reached. The court finds no evidence to support the contention that Debtors filed their Chapter 13 bankruptcy proceeding or proposed the instant Plan for an improper purpose or in bad faith.

Under chapter 7, the non-exempt property of the bankruptcy estate would be liquidated for distribution to creditors. 11 U.S.C. §§ 726, 541. The Debtors' schedules and Plan reflect that the value of non-exempt property available for liquidation under chapter 7 is approximately $16,980, unless Debtors are successful in the state court suit. The Plan reflects that the amount available for general unsecured claims is, at a minimum, $78,654.36. The court concludes that the amount to be distributed to unsecured creditors under the plan is not less than the amount which would be available to unsecured creditors in a Chapter 7 liquidation. The Plan meets the best interests test.

## Conclusions of Law

The failure to confirm a chapter 13 plan can not be justified on the basis that the plan is funded by property the ownership of which is in dispute.  A chapter 13 plan can be funded by a future sale of property.  A debtor proposing a chapter 13 plan need not prove that the plan is guaranteed to be successful.  See *Fillion v. Fillion (In re Fillion)*, 181 F.3d 859, 862 (7th Cir. 1999); *In re Anderson*, 18 B.R. 763, 765 (Bankr. S. D. Ohio 1982).  Running out of money to fund litigation against a litigant with deep pockets is not bad faith. *See In re Mandarino*, 312 B.R. 214, 217 (Bankr. E.D.N.Y. 2002).

In order for a plan to be in the best interests of creditors, the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim must not be less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.  See 11 U.S.C. § 1325(a)(4).

Based on the foregoing, a separate Judgment will be entered confirming Debtors' Plan.

Signed at Houston, Texas on this 22nd day of September, 2006.

_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE